STATE of Maine

v.

**Patrick McDONOUGH and
Dianne McDonough.**

Supreme Judicial Court of Maine.

Argued Nov. 8, 1983.

Decided Dec. 8, 1983.

David M. Cox, Dist. Atty., Gary F. Thorne, Asst. Dist. Atty. (orally), Bangor, for plaintiff.

Patrick McDonough, pro se (orally).

Before McKUSICK, C.J., and NICHOLS, WATHEN, GLASSMAN and SCOLNIK, JJ., and DUFRESNE, A.R.J.

McKUSICK, Chief Justice.

In this consolidated appeal, defendants Patrick and Dianne McDonough seek review of an order of the Superior Court (Penobscot County) that denied their appeals from judgments in the District Court finding that they had committed a civil violation under 20 M.R.S.A. §§ 911, 914 (Supp.1981–1982),[1] as being persons in control of children who were habitually truant, and fining each of them $200. Defendants

1. *Repealed and replaced by* P.L.1981, ch. 693 (effective July 1, 1983). For the replacement, which would make no significant change in the application of compulsory attendance laws to the facts of the case at bar, see 20–A M.R.S.A. §§ 5001–5053 (1983). The statutory references in this opinion are to the former statute, which was applicable in September, 1982, when the civil violation was found to have been committed.

contend 1) that there was insufficient evidence to support the District Court's finding and 2) that 20 M.R.S.A. § 911 unconstitutionally impinged on their asserted constitutional right to educate their children at home. We deny the appeal.

At the hearing before the District Court, the State presented undisputed evidence tending to prove the following facts. On August 25, 1982, Leonard Ney, the superintendent of School Administrative District No. 64, was informed by the principal of the elementary school in Bradford that there were some children of school age living in the Bradford area who were not yet enrolled for the upcoming school year. The principal directed him to the McDonough home. When the superintendent visited there on August 27, 1982, he was greeted in the front yard by Mrs. McDonough. Superintendent Ney observed four children looking out the windows of the house and was informed by Mrs. McDonough that three of her four children were of school age, being of ages twelve, nine, and seven. She told Ney that she and her husband had decided not to enroll the children in school. In reply, Superintendent Ney explained to Mrs. McDonough that "home education plans" were permitted but that a formal procedure for approval was required.

A meeting was arranged between Superintendent Ney and Mr. McDonough at Ney's office in early September. At that meeting Ney told Mr. McDonough that he must either enroll his children in school or submit a home instruction plan to the board of directors of the school district. After being duly notified, Mr. and Mrs. McDonough attended a school board meeting held on September 27, 1982. There, Mr. McDonough, asserting a constitutional right to educate his children at home, told the board that he had not submitted a home instruction plan and that he had not obtained any permission from the superintendent or the school board to keep the children at home. The registers of the schools located in School Administrative District No. 64 showed that none of the McDonough children had been registered in any of the schools in the district between the first day of school, September 1, 1982, and the date of the school board meeting. By unanimous vote the school board found the McDonough children to be truant.

Under Maine law, "[e]very child between his 7th and 17th birthdays shall attend a public day school during the time it is in session," unless the child qualifies for one of the specific exceptions provided by statute. 20 M.R.S.A. § 911(1)(A). One such exception applies where a child "obtains equivalent instruction in a private school or in any other manner arranged for by the school committee or the board of directors and if the instruction is approved by the commissioner." 20 M.R.S.A. § 911(3)(A). Unless a child's absence from public school is attributable to this or another statutory exception, he is determined to be a "habitual truant" if he is absent from school "the equivalent of 10 full days or for ½ of a day on 7 consecutive school days within any 6-month period." 20 M.R.S.A. § 914. Any person "having control of a child who is a habitual truant ... and being primarily responsible for such truancy, commits a civil violation for which a forfeiture of not more than $200 shall be adjudged." 20 M.R.S.A. § 911(8).

■ In order to adjudicate that defendants had committed a civil violation under the last mentioned provision, it was necessary that the District Court find 1) that at least one of the McDonough children was between the ages of 7 and 17; 2) that that child was absent from public school for 10 full days or for ½ of a day on 7 consecutive school days within a six-month period; 3) that his or her absence was not attributable to a statutory exception to the compulsory attendance provision; and 4) that Patrick and Dianne McDonough were in control of that child and primarily responsible for his or her absence. The record contains competent evidence to support the District Court's finding that each of these elements had been established by a preponderance of the

evidence. *See Harmon v. Emerson*, 425 A.2d 978, 981–82 (Me.1981).

Defendants' principal contention is that application of section 911(8) to their conduct unconstitutionally impinges on their claimed right to educate their children at home. At oral argument, defendants conceded that they do not base their claim of a right to educate their children at home on the Free Exercise Clause of the United States Constitution. U.S. Const. amend I, § 1. Instead, defendants rely on a variety of other provisions in the state and federal constitutions, including the remainder of the first amendment and amendments 4, 5, 8, 9, 10, 13, and 14 to the United States Constitution, as well as sections 1, 2, 3, 5, 6, 6–A, and 24 of article I of the Maine Constitution. Defendants' brief indicates that their claim of a right to educate their children at home is based fundamentally on the guarantee in the fourteenth amendment to the United States Constitution that no state shall deprive any person of liberty without due process of law.

Article VIII of the Maine Constitution, from its adoption in convention on October 29, 1819, until today, has declared that

A general diffusion of the advantages of education [is] essential to the preservation of the rights and liberties of the people . . . .

From the start, the Maine Constitution has charged the legislature with requiring "the several towns to make suitable provision, at their own expense, for the support and maintenance of public schools . . . ." *Id.* The United States Supreme Court has recognized that

There is no doubt as to the power of a State, having a high responsibility for education of its citizens, to impose reasonable regulations for the control and duration of basic education.

*Wisconsin v. Yoder*, 406 U.S. 205, 213, 92 S.Ct. 1526, 1532, 32 L.Ed.2d 15 (1972). But the "[s]tate's interest in universal education," however highly ranked, cannot be "totally free from a balancing process when it impinges on fundamental rights and in-

terests." *Id.* at 214, 92 S.Ct. at 1532. Thus, in *Yoder* the United States Supreme Court held that the State of Wisconsin's interest in the education of its citizens was not sufficient to compel the attendance at public school of the children of Old Order Amish beyond the eighth grade, where the children were receiving vocational education at home and where the court found compulsory attendance to pose a grave threat to the free exercise of Amish religious beliefs. Similarly, in *Pierce v. Society of Sisters*, 268 U.S. 510, 534, 45 S.Ct. 571, 573, 69 L.Ed. 1070 (1925), the Court found that an Oregon statute compelling attendance of school-age children at *public* schools unreasonably interfered with the interest of parents in directing the rearing of their offspring by providing an equivalent education in a private school system.

The statute that the McDonoughs challenge neither compels every student to attend a public school nor prohibits home education. It provides in part:

A child shall be excused from attending a public day school if he obtains equivalent instruction in a private school *or in any other manner arranged* for by the school committee or the board of directors and if the equivalent instruction is approved by the commissioner.

20 M.R.S.A. § 911(3)(A) (emphasis added). This provision acknowledges the right of parents to educate their children at home. It defends against abuse of that right by requiring that parents obtain the approval of school officials for home educational programs. If approval is denied by the local school committee or board of directors, the statute further provides that an aggrieved parent may appeal to the Commissioner of Educational and Cultural Services. 20 M.R.S.A. § 911(3)(B). If their appeal in turn is denied by the commissioner, parents have judicial review available to them in the Superior Court. *See* 5 M.R.S.A. § 11001(1) (Supp.1982–1983); M.R.Civ.P. 80C.

Despite repeated invitations by the superintendent of their school district, the McDonoughs consistently refused to

submit a proposal for home instruction of their children. As a result, school authorities never had an opportunity to consider the McDonoughs' claim of a right to educate their children at home.[2] Unless the requirement of prior approval of home instruction programs is itself constitutionally improper, there is no denial of defendants' asserted right to educate their children at home that is properly before this court.

We find that the requirement in section 911 that parents seek the approval of school authorities for home educational plans is fully justified by the state's "high responsibility for education of its citizens."[3] *Wisconsin v. Yoder,* 406 U.S. at 213, 92 S.Ct. at 1532.[4] For the state to allow home education without imposing some standards as to quality and duration would be, in many cases, to allow parents to deprive their children of any education whatsoever. Not all parents who would hold their children out of school under such an unlimited exception to the compulsory education statute would have the sincere desire, which is no doubt present in the instant case, to provide their

children with adequate instruction. Furthermore, many parents, even though they have a sincere desire to educate their children at home, lack the necessary training and facilities to do so. Defendants in fact make no argument that the requirement of prior approval of home instruction plans violates the state or federal constitution.[5] In any event, we do not find anything unreasonable in that requirement.

In short, where the state has provided a reasonable procedure whereby defendants may vindicate their asserted right to educate their children at home, they may not ignore that procedure and then appeal to this court claiming that their right has been denied. Defendants are not barred by this decision from submitting a home instruction proposal to their local school board at any time in the future. If their proposal is denied, they may pursue the avenues of appeal we have outlined above. However, until they obtain approval for a home educational program or qualify for some other statutory exception, they are required by

2. *Cf. Wisconsin v. Yoder,* 406 U.S. 205, 207–08 n. 2, 208–09 n. 3, 92 S.Ct. 1526, 1529–30 n. 2, 1530 n. 3, 32 L.Ed.2d 15 (prior to trial a home instruction proposal was submitted to the state but rejected on the ground that it would not afford Amish children an education "substantially equivalent" to that offered in the public high schools).

3. The power of the state to impose reasonable regulations on the exercise of constitutional rights has been recognized in areas other than education. It has been recognized, for example, that although a citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens, states have valid and sufficient interests in providing some durational voter residency and registration requirements in order to prepare adequate voter records and protect its electoral processes from possible frauds. *See Marston v. Lewis,* 410 U.S. 679, 680, 93 S.Ct. 1211, 1212, 35 L.Ed.2d 627 (1973); *Dunn v. Blumstein,* 405 U.S. 330, 336, 92 S.Ct. 995, 999, 31 L.Ed.2d 274 (1972).

4. Even in *Yoder,* where the Court held that Wisconsin could not compel the attendance of Amish teenagers at public high schools, the Court recognized the power of the state to establish "reasonable standards," consistent

with the Court's opinion, "concerning the content of the continuing vocational education of Amish children under parental guidance." 406 U.S. at 236, 92 S.Ct. at 1543.

5. Defendants do argue before this court that their constitutional privilege against self-incrimination was violated by the requirement that they apply for and obtain prior approval for a home instruction plan. This argument has no merit. Under the express terms of both the federal and state constitutions, the privilege against self-incrimination applies only to criminal cases. U.S. Const. amend. V ("nor shall be compelled in any criminal case to be a witness against himself"); Me. Const. art. I, § 6 ("In all criminal prosecutions, the accused ... shall not be compelled to furnish or give evidence against himself"). Furthermore, the record in this civil violation proceeding is devoid of any showing on the part of defendants as to how information required in an application for approval of a home instruction proposal would tend to convict them in a criminal prosecution. *See Davis v. Fendler,* 650 F.2d 1154, 1160 (9th Cir.1981) ("A *proper* assertion of a Fifth Amendment privilege requires, at a minimum, a good faith effort to provide the trial judge with sufficient information from which he can make an intelligent evaluation of the claim").

law to keep their children enrolled in public school.

The entry is:

Judgment affirmed.

All concurring.